IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| **DAVID ALAN VOGEL** | § | |
| vs. | § | CIVIL ACTION NO. 4:13CV323<br>Criminal Case No. 4:08cr224(1) |
| **UNITED STATES OF AMERICA** | § | |

### ORDER ADOPTING REPORT AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE[1]

The Report and Recommendation of the Magistrate Judge, which contains his findings, conclusions, and recommendation for the disposition of this action, has been presented for consideration. The Magistrate Judge has recommended that Vogel's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 be denied and that the case be dismissed with prejudice. Vogel has filed written objections. Having made a *de novo* review of the objections filed by Vogel, the Court adopts the recommendation of the Magistrate Judge.

**I.  Ineffective assistance of counsel claims reviewed by the Magistrate Judge**

The Court first considers Vogel's objections to the Magistrate Judge's resolution of his ineffective assistance of counsel claim, insofar as it arises from defense counsel's failure to: (1) present evidence of the *Last Acts Partnership/Pain Policies Studies Group at the University of Wisconsin* (hereinafter "Study"), which, according to Vogel, would have validated the opioid prescribing criteria at issue in this case; (2) present evidence of a written policy statement, which

---

[1] The trial transcript is referred to herein by volume and then page number (e.g., "Tr. 1 at 50). Pertinent records kept in the District Court's criminal case file (Criminal Case No. 4:08cr224(1)) are referred to by docket number (e.g., "Dkt. #456).

1

Vogel contends was published by the Texas Medical Board (TMB) in 1993 and addressed methods of treating intractable pain, including opioid therapy (hereinafter "Policy Statement"); (3) effectively cross-examine of expert witnesses Dr. John C. Nelson and Dr. Jon Paul Harmer; (4) object to the prosecutor's use of exhibits during closing arguments; (5) object to the prosecutor's alleged false statements during closing arguments; and (6) request a jury instruction that would require the jury to acquit if it found that Vogel and his company, the Madison Pain Clinic ("MPC"), had complied with state law regarding the prescribing of opioid drugs.

The Sixth Amendment accords criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984). "The Sixth Amendment does not guarantee criminal defendants the right to error-free representation." *See Emery v. Johnson*, 139 F.3d 191, 197 (5th Cir. 1997). "Rather, a criminal defendant is entitled to counsel 'reasonably likely to render and rendering reasonably effective assistance' given the totality of the circumstances." *Hayes v. Maggio*, 699 F.2d 198, 201 (5th Cir. 1983) (citation omitted).

In determining whether counsel's performance was ineffective, courts apply the familiar *Strickland* test. "On a claim of ineffective assistance of counsel, the defendant bears the burden of demonstrating that (1) counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different." *United States v. Bishop*, 629 F.3d 462, 469 (5th Cir. 2010) (citing *Strickland*, 466 U.S. at 697).

Application of *Strickland*'s first prong involves a strong legal presumption that counsel's performance was reasonable: "Judicial scrutiny of counsel's performance must be highly deferential ... [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, defendant must overcome

presumption that, under those circumstances, challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "Thus, a court deciding an ... ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).

To satisfy *Strickland*'s second prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal trial]." *Id*. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." See *United States v. Wines*, 691 F.3d 599, 605 (5th Cir. 2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011); *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).)

Conclusory allegations of ineffective assistance that are unsupported by the record do not raise a constitutional issue in a federal habeas proceeding. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). On review of a motion for vacating a sentence pursuant to 18 U.S.C. § 225, contested fact issues may not be decided on affidavits alone. *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977).

a. **In support of his claim that counsel was ineffective for failure to introduce evidence of the Study, Vogel has offered only conclusory allegations, which cannot sustain a constitutional challenge in a federal habeas proceeding**

In both his Petition and his Objections, Vogel contends that defense counsel rendered deficient performance when he failed to introduce evidence of the Study, either through cross-

examination of the government's witnesses or through defense expert testimony. In his Objections he adds that the Study contained evidence that would have refuted the government's position that the prescribing criteria employed by Vogel and MPC were not outside the usual course of practice and were, instead, "proper medical practice." Objections at 3-4.

Although Vogel has repeatedly affirmed that the Study existed, was available to defense counsel at the time of trial and was, in substance, consistent with his statements to the Court, he has offered no record or extrinsic evidence to corroborate his claims. He has not submitted a paper or electronic copy of the Study for this Court's review. In his Petition, he cited a web address at which the Study was purportedly available:

www.painfoundation.org/enews2004/0904/PainMedLegalFaq.pdf.

But navigation to the URL does not produce the document in question. Instead, the URL leads to a single web page for an organization identified as the American Pain Foundation, which, according to the website, dissolved and ceased to exist in May 2012. Vogel has also claimed that the Study was "originally published on the DEA's website." Petition at 6; Objections at 3. But he has cited no navigable URL for this website and has not provided any indication as to the date of publication or specific page location within the DEA's multi-page website.

Because the only indications of the existence or substance of the Study before the Court are Vogel's own assertions in his moving papers and affidavit, the Court concludes that Vogel's claim is too uncertain and speculative to support an ineffective assistance of counsel claim. *See Miller*, 200 F.3d at 282; *Owens*, 551 F.2d at 1054.

b. **In support of his claim that counsel was ineffective for failure to introduce evidence of the Policy Statement, Vogel has offered only conclusory allegations, which cannot sustain a constitutional challenge in a federal habeas proceeding**

Vogel also contends that defense counsel rendered deficient performance when he failed to introduce evidence of the Policy Statement to rebut the government's claims that prescribing criteria employed by Vogel and MPC doctors were outside the usual course of medical practice. The Magistrate Judge correctly observed that "beyond Vogel's bare assertions that the "policy statement" exists, he has failed to produce any evidence of its existence or availability to counsel at the time of trial." Report and Recommendation at 8-9. The Court agrees with the Magistrate Judge's assessment that this unsupported argument is too uncertain and speculative to support an ineffective assistance of counsel claim. *See Miller*, 200 F.3d at 282; *Owens*, 551 F.2d at 1054.

c. **Vogel's speculative and conclusory allegations do not demonstrate that defense counsel's cross-examination of Drs. Nelson and Harmer was deficient, or that he was prejudiced by counsel's performance**

Next, Vogel argues that counsel rendered deficient performance by failing to challenge adequately the testimony of the government's expert witnesses, Dr. John C. Nelson and Dr. Jon Paul Harmer, through cross-examination. Although his Petition states, generally, that "Counsel did not cross examine government medical experts," he clarifies in his Objections that he takes issue with the quality of counsel's examination, conceding that the witnesses were in fact cross-examined at length, as the Magistrate Judge noted in his Report and Recommendations. Petition at 8; Objections at 4.

Vogel's claim again suffers from speculation. In his Objections, he ventures that, upon further cross-examination, the witnesses would have provided testimony to rebut claims that his prescribing criteria were outside the usual course of medical practice. But he offers neither explanation of the precise testimony that additional cross-examination would have elicited, nor

any basis for concluding that such testimony would have been forthcoming. Vogel points to more extensive argument on this point in his Reply Brief, in which he recalled, without citation to any transcript of witness testimony:

> Movant Vogel vividly remembers one glaring account of conflicting testimony that defense counsel did not pick up on due to his sparse knowledge of the forensic issues in this case. Dr. Nelson testified that the dosage units prescribed by [MPC] doctors were not appropriate. Dr. Harmer on the other hand testified at one point that clinic doctors could have prescribed "one pill instead of twelve" to cover the daily dose a pain patient needed.

Reply at 29. But the Court finds, based on Vogel's own account of the witness testimony, that there was no inherent conflict between the two experts' opinions. By Vogel's account, each expert testified that MPC doctors generally prescribed more pills than were appropriate under the circumstances. Vogel's contention that additional cross-examination would have produced testimony to rebut this notion is entirely unsupported by record evidence.

Given the absence of evidence to support Vogel's allegation of inadequate performance during cross-examination and the fact that the argument set forth in his moving papers is admittedly based on "his notes and memory" rather than the factual record, the Court finds that Vogel's argument is conclusory and does not permit the Court to examine whether counsel's alleged failure prejudiced him. Accordingly, he has shown no entitlement to habeas relief. *See Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009) (denying ineffective assistance claim on habeas review based on counsel's alleged failure to properly cross-examine the State's expert witnesses where petitioner offered no "concrete explanation of the testimony that alleged proper **cross**-**examination** would have elicited"); *United States v. Irby,* 103 F.3d 126 (5th Cir.1996) (unpublished) (denying ineffective assistance claim based on counsel's failure "to adequately cross-examine a number of government witnesses" because petitioner "fail[ed] to set forth ... the possible impact of any additional cross-examination"); *Lincecum v. Collins,* 958 F.2d 1271, 1279

(5th Cir.1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence); *Miller*, 200 F.3d at 282; *Owens*, 551 F.2d at 1054.

**d. Defense counsel's failure to raise a meritless objection to the prosecutor's use of exhibits during closing arguments was not deficient performance**

Next, Vogel renews his argument that defense counsel was ineffective for failing to object to the prosecutor's use of exhibits during closing arguments. During closing, the government referenced several exhibits to reinforce its argument and various themes central to its case. Rather than refer to the exhibits themselves, the prosecutor showed the jury several PowerPoint slides, which each contained images of the exhibits themselves, as well as a textual heading that was not part of the exhibit. One slide, in particular, contained a complete copy of government's exhibit 199A along with the text "be wicked smart" in bold letters. Vogel contends that the added text was objectionable misconduct and that he was prejudiced by defense counsel's failure to object to the slide.

Vogel cites no authority for the proposition that use of the phrase "be wicked smart" is inherently prejudicial or otherwise amounted to prosecutorial misconduct. And, although Vogel implies the prosecutor's use of the phrase "be wicked smart" was not related to the legitimate presentation of evidence and argument in this case, it is clear from the record that the phrase is lifted directly from Vogel's own email account, bewickedsmart@yahoo.com, and several email messages from the account which had been admitted in evidence. *See, e.g.*, Tr. 6 at 1376, 1379. In this context, the Court finds that the government's use of the phrase "be wicked smart" was not impermissible.

Because there was no basis for defense counsel to object to the slide, counsel cannot be deemed deficient for failure to do so. *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir. 2012),

7

("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

e. **Vogel's claim that the prosecutor made false statements during closing arguments is conclusory and unsupported by the record; it cannot sustain his ineffective assistance of counsel claim on habeas review**

In his Objections, Vogel contends that defense counsel was ineffective for failing to object to the prosecutor's alleged false statements during closing arguments. We note that Vogel did not raise this issue in his Petition, which alleged prosecutorial misconduct arising from the alleged misuse of government exhibit 199A, as discussed above, but not from false statements. Petition at 14. Vogel contends that he addresses the issue in his Reply Brief, however the Court is unable to locate any such argument therein. In any event, a claim raised for the first time in a Reply Brief need not be considered on federal habeas review. *See Marroquin v. United States,* Civil Action No. 3:08-CV-0489-G-(BH), 2009 WL 89242, at *4 (N.D. Tex. Jan. 12, 2009) ("Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to 28 U.S.C. § 2255 'specify all the grounds for relief available to the moving party.' Claims raised for the first time in a reply brief need not be considered by the Court… *See United States v. Barrett,* 178 F.3d 34, 57 (1st Cir.1999) ('Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order.'). 'A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief and is not ordinarily a forum to raise new issues.' *United States v. Keyes,* Nos. 07–3453, 03–487–03, 2008 WL 2736392, at *3 n. 3 (E.D.Pa. July 11, 2008)").

Moreover, Vogel offers no more than the conclusory assertion that the prosecutor made false statements in its closing argument. He does not identify any specific offending statements and he cites no evidence to support his claims of falsehood. Even if he had properly raised the issue in his Petition, such unsubstantiated allegations are insufficient to raise a constitutional issue on federal habeas review. *See Miller*, 200 F.3d at 282; *Owens*, 551 F.2d at 1054.

### f. Vogel fails to show that he was prejudiced by defense counsel's failure to request his proposed jury instruction

Vogel renews his argument that he was entitled to a jury instruction stating that the jury must acquit him of the CSA violation if it found that he had complied with state law governing the prescription of opioid drugs. He objects to the Magistrate Judge's conclusion that defense counsel's failure to request such an instruction was not ineffective assistance. Specifically, Vogel objects to the Magistrate Judge's reasoning that he "has offered no legal or factual basis entitling him to such an instruction and the record supports none," and therefore, he cannot show that counsel's failure to request the instruction was deficient performance. Report and Recommendation at 13-14. On *de novo* review, the Court concludes that even if, as Vogel asserts, failure to request the instruction was deficient performance, he has presented insufficient evidence to support a finding of prejudice.

To establish prejudice as required in an ineffective assistance of counsel claim, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S., at 694, 104 S.Ct. 2052. In assessing prejudice, courts "must consider the totality of the evidence before the judge or jury." *Id.,* at 695, 104 S.Ct. 2052.

Review of the record in this case reveals only one witness, healthcare attorney Susan Hendricks, whose testimony could even remotely be construed as supporting the view that Vogel

and MPC were operating in compliance with Texas law governing the prescription of opioid drugs. However, her testimony was far from a ringing endorsement of Vogel and MPC's practices. Hendricks testified that "in [her] opinion, the protocol they were following, if it was followed as described, would not violate Texas law that I am aware of." Tr. 6 at 1547. It is clear from the qualified nature of Hendricks' testimony that she was uncertain whether MPC doctors actually followed the protocol she had in mind. Indeed, she ultimately conceded that she had no personal knowledge of MPC's actual operations and "knew just basically what they told me." Tr. 6 at 1545.

On the other hand, the evidence at trial indisputably established that MPC's protocol was not always followed. Defense counsel freely admitted this in closing arguments, stating: "I'll acknowledge the protocol was violated. We're not going to stand here and argue that it wasn't." Tr. 8 at 1784. Thus, the primary condition Hendricks placed on her opinion about whether MPC was operating in accordance with state law ("if [the protocol] was followed as described") was definitively shown to not be present.

Hendricks' testimony was further undermined by evidence of correspondence between Vogel and a co-conspirator, in which Vogel laments Hendricks' unwillingness to give a written legal opinion that MPC complied with Texas law:

> [S]he already stated that her opinion is not law and that her opinion is not necessarily indicative of anything, unfortunately. Very blatantly putting it, after speaking with her, she has no definitive answers for me. She did state that in her opinion if we did have every patient come into our clinic for an examination with our in-house physician, that the in-house examination should establish the doctor-patient relationship.

GX197; Tr. 8 at 1775.

10

The Court finds that, given the totality of the evidence in the case, there is no reasonable probability that the jury would have found Vogel and MPC were operating in compliance with Texas law. Accordingly, any deficient performance related to defense counsel's failure to request Vogel's suggested jury instruction did not prejudice Vogel and, thus, did not amount to ineffective assistance of counsel.

## II. The Court need not review claims not timely raised in Vogel's Petition, pursuant to Rule 2(b)

Next, the Court considers Vogel's contention that the Magistrate Judge overlooked his argument that defense counsel was ineffective for failing to engage a handwriting expert. Vogel's Petition contains the following enumerated grounds for review:

1. Counsel was ineffective by his lack of understanding of key forensic issues, not introducing exculpatory forensic evidence, and not hiring proper experts to testify at trial
2. Counsel was ineffective by not introducing exculpatory rebuttal evidence to three of the prosecution's exhibits
3. Counsel waived attorney-client privilege without Vogel's consent and, furthermore, did not properly prevent certain privileged documents from coming into evidence by making proper objections
4. Counsel was ineffective by not objecting to multiple examples of the prosecution "vouching" of evidence and the prosecution's improperly framed questions to witnesses
5. Counsel was ineffective by not noticing and taking action regarding a serious incident of prosecutorial misconduct of trial
    a. The prosecution's substantive misconduct was so serious and grave that it warrants vacation of Vogel's conviction
6. Counsel was ineffective by conceding during closing arguments that the jury must either convict Vogel of all charges or acquit him of all charges
7. Counsel was ineffective for failing to prepare Vogel to testify
8. The Cumulative Effect of counsel's ineffective assistance rendered Vogel's conviction unconstitutional
9. Counsel was ineffective for failing to argue before trial and on appeal that in the absence of a national standard for prescribing opiate therapy for pain management, application of the Controlled Substances Act ("CSA") in this case violated the Tenth Amendment
    a. As applied in this case, the CSA violates the Tenth Amendment

10. Counsel was ineffective by not requesting a jury instruction that would require acquittal if the jury found Vogel complied with state law regarding prescription of opioid drugs
11. Vogel was sentenced in violation of the Sixth Amendment
12. Vogel's sentence was unconstitutional because it was unconscionably higher than his Rule 11 plea bargain offer

Petition at 6-22. The Court finds that the Report and Recommendation reflects the Magistrate Judge's review of these enumerated issues along with the numerous sub-issues identified in Vogel's Petition. Vogel correctly observes that the Magistrate Judge did not review his claim that counsel failed to engage a handwriting expert. However, because the claim was asserted in Vogel's Reply, not in his Petition, the Magistrate Judge had no obligation to do so.

As discussed above, pleadings under 28 U.S.C. § 2255 are governed by Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Court. Rule 2(b) provides that a motion under 28 U.S.C. § 2255 must "(1) specify all the grounds for relief which are available to the moving party; [and] (2) state the facts that support each ground[.]"

Vogel's claim regarding failure to engage a handwriting expert was not properly asserted under this provision. Vogel's Petition, under "Ground One," assigns error to counsel's alleged failure to "hire a proper **forensic** expert to testify that Opiate Therapy as prescribed by Mr. Vogel's medical clinic was proper medicine." Petition at 7 (emphasis added). But Vogel did not assert counsel's failure to engage a **handwriting** expert as a ground for relief anywhere in the Petition. Instead, he raised that argument for the first time in his Reply brief. Reply at 30. Accordingly, under Rule 2(b), he has waived the right to federal habeas review of the claim.

III. **Vogel's Tenth Amendment challenge to his conviction under the CSA**

Finally, the Court considers Vogel's objection to the Magistrate Judge's conclusion that he is not entitled to habeas relief on the basis that his conviction under the CSA violated the Tenth Amendment and counsel's failure to challenge the law on that basis during pretrial

12

proceedings and on direct appeal constituted ineffective assistance. Vogel challenges both the Magistrate Judge's conclusion that his arguments are procedurally barred and that, substantively, his claims lack merit. First, the Court notes that Vogel correctly observes that defense counsel raised only a Fifth Amendment challenge to the CSA in pretrial proceedings and on direct appeal. His Tenth Amendment challenge was not asserted at those stages. However, the Court agrees with the Magistrate Judge's assessment that Vogel's Tenth Amendment challenge to the CSA and his related ineffective assistance of counsel claim lack merit.

The CSA imposes criminal penalties for the knowing or intentional delivery, distribution, or dispensation of a controlled substance by means of the Internet without a "valid prescription," which the statute defines as a "prescription issued for a legitimate medical purpose in the usual course of professional practice by—(i) a practitioner who has conducted at least 1 in-person medical evaluation of the patient; or (ii) a covering practitioner." RYAN HAIGHT ONLINE PHARMACY CONSUMER PROTECTION ACT OF 2008, § 2, § 311, PL 110–425, 122 Stat 4820 (2008) (current version at 21 U.S.C. 829 (e)(2), 21 U.S.C. 841(h)(1)(A)-(B), (2)(B)). The statute therefore sets forth what Vogel characterizes as a "'national' standard of care," which practitioners must adhere to when prescribing controlled substances for medicinal purposes. Petition at 18. Vogel maintains that Congress has no constitutional authority to regulate the prescription of controlled medicinal substances, such as the opioid drugs at the center of this case. Accordingly, he contends that power to regulate in this area is reserved to the states under the Tenth Amendment and his alleged compliance with Texas laws governing opioid prescription shields him from any criminal liability.

The United States Supreme Court rejected a similar argument in *Gonzales v. Raich*, 545 U.S. 1, 125 S. Ct. 2195 (2005). In *Gonzalez*, several California residents had manufactured

and/or possessed small amounts of marijuana for intrastate, personal, medical use, in full compliance with California's Compassionate Use Act. *Id.* This activity undisputedly violated the CSA, but, like Vogel, the respondents argued that as applied to them, the CSA was beyond the scope of Congress' constitutional authority. *Id.* at 8. The Court considered whether Congress' commerce power permitted it to regulate such purely local activity.

The Court reasoned that, although the intrastate growth and use of marijuana for medical purposes, as otherwise authorized by California law was a purely local activity, it was, nonetheless, part of an economic class of activities that has substantial effect on interstate commerce. *Id.* at 17. Citing longstanding precedent, the Court noted that the Commerce Clause grants Congress power to regulate such activities. *Id.* And state action cannot circumscribe Congress' plenary commerce power over such activities. *Id.* at 29-33. The Court concluded that application of the CSA to the intrastate growth and use of marijuana for medical purposes was rationally related to the regulation of interstate commerce in marijuana and, therefore, within Congress' commerce power.

Vogel and MPC's prescription of opioid drugs, purportedly for medical use, is analogous to the growth and use of medical marijuana at issue in *Gonzales*. Following the Supreme Court's rationale in that case, even if Vogel and MPC prescribed opioid drugs entirely within the state of Texas to citizens of that state—and the record does not establish that their activity was so limited—this purely local activity is, nonetheless, part of an economic class of activities that has substantial effect on interstate commerce in opioid drugs. Thus, it is subject to federal regulation under Congress' commerce power. Moreover, even if Vogel and MPC complied with Texas law governing the prescription of opioid drugs—which the record does not conclusively demonstrate—the state's regulatory action does not circumscribe Congress' authority to legislate

on such matters. To the extent Texas law on the subject conflicts with the CSA, "[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Id.* at 29.

The Court concludes that CSA is a valid exercise of federal power, even as applied in Vogel's case. Accordingly, his conviction under the CSA was not contrary to the Tenth Amendment. The Court also finds that, because Vogel's Tenth Amendment argument is meritless, defense counsel's failure to assert an objection or appeal based on the argument does not amount to deficient performance. *See Clark*, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); *Green,* 160 F.3d at 1037 ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

## IV.    Conclusion

The Court finds that Vogel's objections are without merit and will be overruled. The Court adopts the findings and conclusions of the Magistrate Judge to the extent they are not inconsistent with this order.

In light of the foregoing, it is

**ORDERED** that Petitioner's objections are hereby **OVERRULED**. It is further

**ORDERED** that Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and that the case is hereby **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that any motion not previously ruled on is **DENIED.**

SIGNED at Beaumont, Texas, this 8th day of August, 2016.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE